STATE v. MONROE

[230 N.C. App. 70 (2013)]

———————————

STATE OF NORTH CAROLINA
v.
PARNELL MONROE III

No. COA13-232

Filed 1 October 2013

1. **Evidence—prior crimes or bad acts—criminal record—drug use**

    The trial court did not err in a robbery with a dangerous weapon and possession of stolen goods case by denying defendant's motion to redact the videotaped interrogation referencing his prior criminal record and drug use. The pertinent statement was relevant under

STATE v. MONROE

[230 N.C. App. 70 (2013)]

Rule 402 and its probative value was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

**2.  Criminal Law—prosecutor's argument—feelings of sympathy for defendant**

The trial court did not err in a robbery with a dangerous weapon and possession of stolen goods case by overruling defendant's objection to the prosecutor's closing argument. The prosecutor's challenged statement merely implored the jury not to allow feelings of sympathy to overshadow the application of the law to the evidence presented.

**3.  Possession of Stolen Property—failure to instruct on lesser-included offense—non-felonious possession**

The trial court did not err in a robbery with a dangerous weapon and possession of stolen goods case by denying defendant's request for a jury instruction on the lesser-included offense of non-felonious possession of stolen goods. There was no other evidence presented that either stolen van could be valued at $1,000.00 or less.

Appeal by defendant from judgments entered 8 August 2012 by Judge William Z. Wood, Jr., in Forsyth County Superior Court. Heard in the Court of Appeals 28 August 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Laura E. Parker, for the State.*

*Marilyn G. Ozer for defendant-appellant.*

BRYANT, Judge.

Where the trial court denied defendant's motion to redact portions of a videotaped interview, we find no prejudicial error. Where the trial court overruled defendant's objection to the prosecutor's closing argument and denied defendant's request for a jury instruction on the lesser-included offense of non-felonious possession of stolen goods, we find no error.

On 28 November 2011, defendant Parnell Monroe III was indicted on two counts of felony possession of stolen goods, common law robbery, and robbery with a dangerous weapon. Defendant was also indicted on attaining habitual felon status and attaining violent habitual felon status.

On 2 August 2012, the charge of common law robbery was dismissed by the State. Defendant's jury trial commenced during the 6 August 2012 criminal session of Forsyth County Superior Court, the Honorable William Z. Wood, Jr., Judge presiding.

The evidence presented at trial tended to show that in October 2011, two white, fifteen passenger vans – a 2003 Ford and a 2000 Dodge – were discovered missing from Freedom Cathedral Children's Academy, a daycare business, located at 945 Cleveland Avenue, Winston-Salem. On 8 October 2011, a store clerk working at the In and Out Convenience Store and Sunoco gas station located at 110 South Broad Street observed a person walk into the convenience store wearing a wig and a black coat, holding an eleven-inch knife. The assailant said, "Open the drawer and give me the money." The store clerk testified that the assailant took $2,448.00 from the cash register, then exited the store and entered a white, ten-to-fifteen passenger van. A video of the encounter taken from the convenience store surveillance system was played for the jury.

On 12 October 2011, a patrol officer with the City of Winston-Salem Police Department observed defendant in the parking lot of the Southgate Apartment Complex located in the 900 block of East Second Street. The officer observed defendant tampering with the license plate of one of two white fifteen passenger vans parked next to each other. In a conversation with the officer, defendant explained that he was switching the vehicle license tags. Defendant stated that he had been paid fifty dollars to start the vehicles daily for a couple of weeks. Then defendant volunteered that he believed the vehicles were probably stolen. The officer ran the vehicle information through a police database and both vans, one a Ford and one a Dodge, had been reported stolen. Defendant was arrested and placed in the back of the police car. Later, in the back of that police car, the officer found a torn-up registration card for the Ford van.

At the police station, defendant was given his Miranda warnings, agreed to talk, and a detective conducted an interview which was videotaped. During the course of the interview, defendant was questioned about a break-in that involved two vehicles. Defendant denied participating in any break-in, stating that "I don't do store break-ins. . . . Now, if I was down here for some robberies . . . if I am down here for some robberies, then I'm guilty." A second detective then questioned defendant about the robbery of the Sunoco gas station by an assailant wearing a wig and a long black coat, driving a white van. A videotape of the interview with defendant was admitted into evidence and played for the jury.

On 8 August 2012, the jury returned verdicts finding defendant guilty of robbery with a dangerous weapon, and two counts of possession of stolen goods. During a second phase of the trial, the jury found defendant guilty of being a violent habitual felon. Defendant pled guilty to attaining habitual felon status, reserving his right to appeal either the underlying substantive convictions or the determination of his status as a violent habitual felon. The trial court entered judgment in accordance with the jury verdicts and guilty plea. Consolidating for entry of judgment the charges of robbery with a dangerous weapon and attaining violent habitual felon status, the trial court sentenced defendant to life in prison without the possibility of parole. Consolidating for entry of judgment one count of possession of stolen goods and attaining habitual felon status, the trial court sentenced defendant to 110 to 141 months. On the second count of possession of stolen goods, defendant was sentenced to a term of 110 to 141 months. Defendant appeals.

---

On appeal, defendant raises the following issues: whether the trial court erred by (I) denying his motion to redact the videotaped interrogation; (II) overruling his objection to the prosecutor's closing argument; and (III) denying his request for jury instruction.

*I*

[1] Defendant first argues the trial court erred when it overruled his objections and allowed the jury to hear references to his prior criminal record and drug use. Specifically, defendant contends that the statements admitted "were irrelevant under Rule 402, prejudicial under Rule 403, that prior convictions cannot come in under Rule 609 and that the prior bad acts and other robberies were not similar to the current charge under Rule 404(b)." We disagree.

During trial, a video of defendant's 12 October 2011 interview with police detectives was played for the jury.[1] On the video recording, defendant describes how he came into possession of the vans. Defendant states that he received the keys to the vans along with fifty dollars from an acquaintance he met first in 2001. Defendant states to law enforcement officers that the acquaintance asked defendant to look after the vans and start them up occasionally. Defendant states that he believed

---

1. In his brief on appeal, defendant acknowledges that portions of the videotape were redacted to exclude any statement made prior to the reading of defendant's Miranda rights.

the vans were probably stolen. When asked how he knew the acquaintance, defendant stated, "I used to go down to his house to get high." During the interview, defendant made statements denying any involvement in the theft of the vans. "I don't do breaking and enterings." "That's not me, see my record." And, "if it's robbery I am guilty, that's what I did in the past[.]" Detectives subsequently questioned defendant about robberies at the Sunoco gas station on Broad Street and a BP gas station. Defendant stated "at both the BP & Sunoco I was wearing a wig[.]" Defendant objected to the admission of these statements at trial.

### Evidence of prior drug use

During defendant's videotaped interview with law enforcement officers, defendant states "I used to go down to his house to get high[.]" On appeal, defendant argues that this statement was not relevant to any issue and was inadmissible pursuant to Rules of Evidence 402 ("Relevant evidence generally admissible; irrelevant evidence inadmissible"), 403 ("Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time") and 404(a) ("Character evidence generally.").

Defendant's indictment on two counts of possession of stolen goods alleged that he unlawfully, willfully and feloniously possessed a white 2003 Ford Econoline and a white 2000 Dodge Ram Wagon. In his videotaped interview with police detectives, defendant states that the vans were parked in a lot across the street from his apartment and that an acquaintance named "Fast Hands" handed him the keys to the vans along with fifty dollars and instructions to turn the vans on occasionally. Defendant further states his belief that the vans were stolen. When asked how he knew Fast Hands, defendant stated that in 2001, "I used to go down to his house to get high[.]"

Pursuant to our Rules of Evidence, codified under Chapter 8C of the North Carolina General Statutes, " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." N.C. Gen. Stat. § 8C-1, Rule 801(c) (2011). However, "[a] statement is admissible as an exception to the hearsay rule if it is offered against a party and it is [] his own statement . . . ." N.C.G.S. § 8C-1, Rule 801(d). We hold that defendant's video recorded statement to law enforcement officers illustrates the relationship between defendant and Fast Hands such that Fast Hands would entrust defendant with the vans and provides some background for defendant's comment that he believed the vans were stolen. Therefore, we hold the statement is relevant under Rule 402 and its probative value is not substantially outweighed by the danger of unfair

prejudice, confusion of the issues, or misleading the jury, as required under Rule 403. *See* N.C. Evid. R. 402 and 403.

On appeal, defendant also mentions that "[e]vidence of a person's character is not admissible for the purposes of proving he acted in conformity therewith." Defendant cites Rules of Evidence, Rule 404(a). As we are unable to discern how in this context defendant's admission that he used to "get high" supports the assertion that he acted in conformity therewith in feloniously possessing stolen goods or committing robbery with a dangerous weapon, we overrule this argument and affirm the trial court's admission of defendant's statement.

*Evidence of defendant's criminal record and other robberies*

During his interview with police detectives regarding his possession of the vans and the theft from Freedom Cathedral Children's Academy, defendant stated, "I don't do break-ins's. Look at my record. I do robberies." Subsequently, while being questioned about the robbery of the Sunoco gas station, defendant described his actions in robbing both the Sunoco station on Broad Street and a BP station. The State acknowledged to the trial court that defendant was not currently being tried for the robbery of the BP station.

On appeal, defendant contends that the admission of these statements, one referencing a prior record for robbery and the other admitting defendant's involvement in a robbery for which he was not on trial, violated Rules of Evidence 404(b) and 609.

Pursuant to Rule 404(b),

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment or accident.

N.C. Gen. Stat. § 8C-1, Rule 404(b) (2011).

Pursuant to Rule 609, "[f]or the purpose of attacking the credibility of a witness, evidence that the witness has been convicted of a felony . . . shall be admitted if elicited from the witness or established by public record during cross-examination or thereafter." N.C.G.S. § 8C-1, Rule 609 (2011).

We note that pursuant to North Carolina General Statutes, section 15A-1443,

STATE v. MONROE

[230 N.C. App. 70 (2013)]

[a] defendant is prejudiced by errors relating to rights aris-
ing other than under the Constitution of the United States
when there is a reasonable possibility that, had the error
in question not been committed, a different result would
have been reached at the trial out of which the appeal
arises. The burden of showing such prejudice under this
subsection is upon the defendant.

N.C. Gen. Stat. § 15A-1443(a) (2011).

Applying this standard to the facts presented on appeal, we cannot
say that the jury would have reached a different verdict on the charges
of felonious possession of stolen goods or robbery with a dangerous
weapon. There was substantial evidence presented that defendant pos-
sessed two stolen vans and that prior to his arrest he believed them to
be stolen. As to the charge of robbery with a dangerous weapon, the
unchallenged admission of evidence includes portions of defendant's
interview with police detectives during which defendant admitted to
robbing the Sunoco gas station on Broad Street in a manner consistent
with the testimony of the store clerk who described the robbery: defen-
dant entered the store wearing a wig; he had a knife; defendant opened
the cash register and took the money tray out, then seeing the larger
bills under the money tray, defendant opened the cash register again
and removed the bills of larger denomination; defendant then exited the
store. Accordingly, we overrule defendant's argument.

*II*

**[2]** Defendant next argues that the trial court erred by overruling his
objection to the State's prediction that defendant would ask the jurors
to ignore the evidence and instead base their verdict on sympathy.
Defendant asserts that for this reason he is entitled to a new trial on the
charge of attaining violent habitual felon status. We disagree.

It is well settled in North Carolina that counsel is
allowed wide latitude in the argument to the jury. Even
so, counsel may not place before the jury incompetent
and prejudicial matters by injecting his own knowledge,
beliefs and personal opinions not supported by the evi-
dence. The control of the arguments of counsel must be
left largely to the discretion of the trial judge, and the
appellate courts ordinarily will not review the exercise of
the trial judge's discretion in this regard unless the impro-
priety of counsel's remarks is extreme and is clearly cal-
culated to prejudice the jury in its deliberations.

*State v. Johnson*, 298 N.C. 355, 368-69, 259 S.E.2d 752, 761 (1979) (citations omitted).

Following the return of the jury verdicts finding defendant guilty of felonious possession of stolen goods and robbery with a dangerous weapon, a second trial phase began during which defendant was tried on the charge of attaining violent habitual felon status, as defined under North Carolina General Statutes, section 14-7.7.[2] The State presented evidence that defendant pled guilty to robbery with a dangerous weapon on 25 April 1995, having committed the crime on 20 December 1994, and that defendant pled guilty to robbery with a dangerous weapon on 12 July 2003, having committed the offense on 10 September 2002.

During the prosecutor's closing argument on the charge of attaining violent habitual felon status, defendant challenged the following:

> [Prosecutor]: Now Ladies and Gentlemen, I'm standing first. So I have to try to anticipate what the defense might say to you to try to persuade you to simply ignore the evidence that's right in your hand. To simply ask for a little sympathy, perhaps, a little – just something just to kind of – to ignore it. The sentence is too much. He's got to go to jail.
>
> [Defense counsel]: Objection. Improper argument.
>
> THE COURT: Overruled.

On appeal, defendant argues that the prosecutor had no reason to anticipate that in delivering his closing argument, defense counsel would not follow the guidelines set out by case law and rules of professional conduct.

> [In his brief submitted to this Court, defendant acknowledged that the prosecutor is] allowed "anticipatory rebuttal of various issues, either legal or factual, that might be raised by the defendant during his closing argument." *State v. Walls*, 342 N.C. 1, 48-49, 463 S.E.2d 738, 763 (1994). But asserting that the defense counsel will violate the permissible parameters of argument and instead urge the jurors to ignore the evidence and the law goes beyond permissible anticipatory rebuttal.

---

2. N.C. Gen. Stat. § 14-7.7(a) (2011). "Any person who has been convicted of two violent felonies in any federal court, in a court of this or any other state of the United States, or in a combination of these courts is declared to be a violent habitual felon."

STATE v. MONROE

[230 N.C. App. 70 (2013)]

We do not believe the prosecutor's comments were improper: we do not believe the comment diminished the jury's sense of responsibility to follow the law. *See State v. Frye*, 341 N.C. 470, 506, 461 S.E.2d 664, 683 (1995). Also, defendant has failed to present any authority which precludes a prosecutor from addressing the potential for sympathy for a defendant in a closing argument. *See generally, id.* ("[P]rosecutors may properly argue to the sentencing jury that its decision should be based not on sympathy, [or] mercy . . . but on the law." (citation omitted)). *See also, United States v. Lighty*, 616 F.3d 321, 360 (4th Cir. 2010) (The defendant challenged on appeal the following comment by the Assistant United States Attorney made during closing argument: "Counsel ended his closing argument by asking you for mercy. What he's asking you to do is feel sorry for, feel sorry for [the defendant], and in some way use that sympathy to not do what the law in this case requires you to do . . . ." The Court held that the Assistant United States Attorney's argument was a fair response to the defendant's request for mercy.). *Compare State v. Scott*, 314 N.C. 309, 312, 333 S.E.2d 296, 298 (1985) (The Court held the prosecutor's statement during closing argument improper where it "went outside the record and appealed to the jury to convict the defendant because impaired drivers had caused other accidents.").

Here, the prosecutor's challenged statement implores the jury not to allow feelings of sympathy to overshadow the application of the law to the evidence presented. We further note that in the context of the prosecutor's argument, she advocated for the jurors to "follow the law and the facts. . . . There is no reasonable doubt here, and a reasonable doubt is not a doubt that is based on sympathy . . . ." We hold that the trial court did not abuse its discretion in overruling defendant's objection to the prosecutor's closing argument. *See Johnson*, 298 N.C. at 368-69, 259 S.E.2d at 761. Accordingly, we hold no error.

*III*

**[3]** Lastly, defendant argues that he is entitled to a new trial based on the trial court's denial of his request to include an instruction on non-felonious possession of stolen property. Specifically, defendant contends that he was charged with felonious possession of two stolen vans. If the jury could infer that one or both of the vans was worth less than $1,000.00, the jury could have found defendant guilty of non-felonious possession of stolen goods. We disagree.

"A defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *State v. Tillery*, 186

**STATE v. MONROE**

[230 N.C. App. 70 (2013)]

N.C. App. 447, 450, 651 S.E.2d 291, 294 (2007) (citation and quotations omitted). Here, defendant was indicted on two counts of felonious possession of stolen goods. In order for the possession to be felonious, the fair market value of the stolen property must exceed $1,000.00 at the time of the theft. *State v. Davis*, 198 N.C. App. 146, 151, 678 S.E.2d 709, 713 (2009). "The State is not required to produce direct evidence of [] value to support the conclusion that the stolen property was worth over $1,000.00, provided that the jury is not left to speculate as to the value of the item." *State v. Rahaman*, 202 N.C. App. 36, 47, 688 S.E.2d 58, 66 (2010) (citation and quotations omitted).

Here, testimony on the value of vans was given by Cynthia Blackmon, the registered owner of the 2003 Ford Econoline Van and an owner of Freedom Cathedral Christian Ministries, Inc., a daycare which owned the 2000 Dodge Ram Wagon. Blackmon testified that both vans were purchased over six years prior to trial and each van cost between $12,000.00 and $15,000.00. She estimated that the Ford van was worth between $10,000.00 and $12,000.00 when it was stolen and that the Dodge was worth $7,000.00. Mrs. Blackmon's husband, Timothy Blackmon, a co-owner of Freedom Cathedral Christian Ministries, Inc., also testified that the Ford van was worth between $10,000.00 and $11,000.00 and that the Dodge van was worth between $7,000.00 and $8,000.00.

As there was no other evidence presented that either van could be valued at $1,000.00 or less, the trial court did not err in denying defendant's request to instruct the jury on non-felonious possession of stolen goods as a lesser-included offense of felonious possession of stolen goods. Accordingly, we overrule defendant's argument.

No prejudicial error; no error.

Judges STEPHENS and DILLON concur.